UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JON ROSELL, et al.,

    Plaintiffs,

    v.

WELLS FARGO BANK,

    Defendant.
_____/

No. C 12-6321 PJH

**ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT**

    The motion of plaintiffs Jon Rosell and Jane Rosell for leave to amend the complaint to add class allegations came on for hearing before this court on July 10, 2013. Plaintiffs appeared by their counsel Matthew Mellen, and defendant Wells Fargo Bank ("Wells Fargo") appeared by its counsel Michael Rapkine. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion as follows.

## BACKGROUND

    On February 15, 2007, plaintiffs obtained a $772,000 loan from Wells Fargo's predecessor, World Savings Bank, FSB. The loan was evidenced by a promissory note secured by a written deed of trust on certain real property located in Pleasanton, California.

    Plaintiffs allege that in October 2009, they contacted Wells Fargo about "financing options" after seeking an advertisement regarding mortgage financing. They claim that Wells Fargo informed them that they could be candidates for a loan modification with a better interest rate or monthly mortgage payment and that they should submit certain financial documents.

    They assert that while they repeatedly submitted the required financial paperwork to


Wells Fargo, Wells Fargo closed their loan modification file, indicating that it was "unable to process their request due to non-receipt of required documentation or information." Consequently, plaintiffs contend, because they never completed the loan modification application, they never completed or signed any final loan modification documents.

Wells Fargo asserts that in mid-2010, plaintiffs requested a loan modification, at which time Wells Fargo assigned a Home Preservation Specialist to conduct the modification review and to deal directly with plaintiffs. On December 14, 2010, the Home Preservation Specialist informed plaintiffs that certain documentation needed to be sent to the bank's Loss Mitigation Department in order to proceed with the modification review process. In January 2011, Wells Fargo sent plaintiffs a letter stating that the documentation needed to finalize the loan modification review had not been received. Plaintiffs responded with a letter stating that all documentation had been sent in two weeks previously.

Wells Fargo contends that on January 28, 2011, it sent plaintiffs a letter informing them that because a loan modification request had been made, an escrow account had been established, and that the account would be required "for the life of the loan." On February 4, 2011, Wells Fargo informed plaintiff that because the property taxes had not been paid, it had advanced the payment for delinquent taxes and any accrued penalties and interest. Wells Fargo ultimately determined that the plaintiffs did not qualify for a loan modification.

Plaintiffs claim, however, that beginning in early 2010, Wells Fargo began returning portions of their monthly payments which were in excess of the minimum required payment. According to plaintiffs, the returns were "sporadic" and "impossible to track on statements," thereby making it impossible for plaintiffs to understand the problem. Thus, plaintiffs assert, they continued submitting their monthly payments as before.

Plaintiffs allege that Wells Fargo has a policy of automatically opening an escrow account when a residential loan borrower seeks a loan modification. According to plaintiffs, in February 2011, a "mysterious" escrow account appeared for the first time on their

monthly statement.  The statement indicated there was a balance of approximately $8,055.39 in the account.  Around the same time, plaintiffs received a letter from Wells Fargo which indicated that Wells Fargo had attempted to pay plaintiffs' property taxes and discovered that the taxes were already paid.

Plaintiffs contend that they had always paid their own property taxes in a timely manner and had never requested that Wells Fargo pay the taxes on their behalf.  Two subsequent letters indicated that Wells Fargo had charged plaintiffs' account for the taxes and then refunded what appeared to be the tax amount.

Plaintiffs allege that when they contacted Wells Fargo to resolve the "accounting error," they were informed for the first time that Wells Fargo was taking the position that the loan had been modified, and that the escrow account had been created when plaintiffs modified their loan in or around October 2009.  According to plaintiffs, they were "shocked" because they had never completed the loan modification application process and their payment had not changed.  Plaintiffs informed Wells Fargo of that fact and instructed Wells Fargo to remove the escrow account since plaintiffs had not consented to it.

Plaintiffs assert that Wells Fargo did not close the escrow account – and in addition, claim that Wells Fargo began transferring $0.02 per month from plaintiffs' payment to this "mysterious" escrow account.  The balance of the escrow account allegedly changed monthly, with the highest being $9,255.84 and the lowest being $5,132.83.

Plaintiffs allege that Wells Fargo's application of a portion of their monthly payment into the escrow account continued until April 20, 2012, when the entire $3,700.00 payment was "mysteriously" not applied to their account pursuant to the loan agreement.  Plaintiffs claim that this time, instead of applying the payment to the principal and interest on the loan, Wells Fargo failed to apply the payment to any account.  Rather, as indicated on the statement for that month, plaintiffs' payment was categorized as "Unapplied Funds" and plaintiffs were still considered due for their April 2012 payment.  Thus, plaintiffs assert, Wells Fargo considered the April payment to have not been made, and applied a late charge of $181.28 to the balance due.

Plaintiffs claim that in May 2012, their $3,625.63 payment was again categorized as "Unapplied Funds" rather than being applied to the principal and interest.  At the same time, Wells Fargo allegedly withdrew an amount from the "Unapplied Funds" and applied it to plaintiffs' April 2012 payment it considered due and also made a $665.64 escrow payment.  Once again, Wells Fargo charged plaintiffs a $181.28 late fee.  Plaintiffs assert that this continued to occur each month thereafter, and that in July 2012, they began receiving "Notices of Intent to Foreclose," and that beginning in November 2012, Wells Fargo began refusing to accept plaintiffs' regular monthly payment.

Plaintiffs filed the present individual action on December 13, 2012, alleging four causes of action – breach of contract, breach of the implied covenant, conversion, and "unlawful, unfair, and/or fraudulent business practices" under California Business & Professions Code § 17200.

On January 8, 2013, Wells Fargo moved to dismiss the complaint.  The court granted the motion, with leave to amend, and plaintiffs filed the first amended complaint on April 3, 2013.  Wells Fargo filed an answer on April 29, 2013.  On May 9, 2013, the court conducted a telephonic case management conference, at which time plaintiffs indicated their intention to seek leave to amend the complaint to add class allegations.  The court indicated that it would defer entering a pretrial schedule until the pleadings were settled.

Plaintiffs now move for leave to file a second amended complaint ("SAC"), to include class allegations against Wells Fargo.  Plaintiffs claim that at the March 6, 2013 hearing on the motion to dismiss the original complaint, they learned for the first time that Wells Fargo has a "policy" of creating an escrow account whenever a borrower seeks a loan modification.  It is based on this alleged "policy" that they now seek leave to amend the complaint to add class allegations.

The proposed SAC defines the proposed class as "[a]ll persons who had an escrow account set up by Wells Fargo as a result of applying for a loan modification who then had a portion of their monthly mortgage payments, or a portion thereof, applied to the escrow account."  Plaintiffs allege that "[t]he case presented herein satisfies all the prerequisites for

4

class treatment under FRCP 23(a)." However, they do not indicate the subsection of Rule 23(b) under which they seek certification. In addition, the definition of the proposed class does not provide a beginning date.

## DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 15(a), a party may amend its complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). Thereafter, a party may amend only by leave of the court or by written consent of the adverse party. Id. Rule 15(a), however, instructs that "leave shall be freely given when justice so requires." Id. See also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).

Leave to amend should be granted where there is no "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009).

Ultimately, the grant or denial of an opportunity to amend is within the discretion of the district court. Foman, 371 U.S. at 182 (district court may properly deny leave to amend but outright refusal to grant leave without any justifying reason is not an exercise of discretion"); Eminence Capital, 316 F.3d at 1051-52 (underlying purpose of Rule 15 is to "facilitate decision on the merits, rather than on the pleadings or technicalities"). The district court has particularly broad discretion to deny leave to amend where plaintiff has previously amended the complaint. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).

### B. Plaintiffs' Motion

Plaintiffs seek leave to amend the complaint to add class allegations. Emphasizing that motions for leave to amend are liberally granted, they contend that their motion is not

brought for an improper purpose and is not futile, and that they did not delay unduly in seeking leave to amend, as they filed the motion shortly after they discovered the potential for class claims during oral argument on the first motion to dismiss.

Plaintiffs also contend that transforming this individual action into a class action will not prejudice Wells Fargo, because the proposed SAC alleges the same conduct complained of in the original complaint. Plaintiffs claim that no disparate issues will be interjected into the case, that the main lawsuit will not be obfuscated, and that the nature of the lawsuit will not be dramatically altered. Hence, they argue, Wells Fargo will not be unfairly surprised nor prejudiced because it is already a defendant in this action.

In opposition, Wells Fargo concedes that there has been no undue delay, and states that it "will not cast aspersions on plaintiffs' motives in bringing the motion." Wells Fargo argues, however, that the proposed amendment would be futile, and contends that granting the motion would result in significant prejudice, in light of the fact that filing the proposed SAC would be futile.

With regard to futility, Wells Fargo asserts that plaintiffs cannot establish common issues or fact or law, or that their claims are typical of those of the proposed class. First, Wells Fargo asserts that there are few common questions of fact or law, because the putative class members hold different security instruments, because there are choice-of-law issues, and because damages cannot be adjudicated on a class wide basis. Wells Fargo argues that the type of loan that the plaintiffs have represents "just a fraction of the loans that Wells Fargo currently owns and services," and contends that variation among putative class members' contracts can defeat the commonality element for a class action suit. In addition, Wells Fargo notes that the plaintiffs' World Savings deed of trust contains an express provision that allows a lender to set up an escrow account at any time.

Wells Fargo also contends that the proposed class allegations raise overwhelming individual questions of state law, which would militate against the creation of a nationwide class. Wells Fargo notes that it uses a standard "governing law" provision, whereby many of its contracts will state that to the extent Federal law does not apply, the applicable law

6

will be the law of the jurisdiction in which the property is located. Thus, Wells Fargo argues, this provision would require loan-specific inquiries to determine the proper state law and its applicability. Wells Fargo contends that such individualized inquiries would render a class action improper.

In addition, Wells Fargo asserts that there would be problems with assessing damages, as the court would have to review the financial records of every class member to determine whether they could prove damages, as each class member would be at a different stage of the loan, and some would even not qualify for damages.

Wells Fargo argues further that the plaintiffs are atypical of the putative class, because the deed of trust that secures their loan differs from those held by other class members, and because plaintiffs are subject to laws and defenses unique to them. For example, California law would apply to the plaintiffs' claims, though not to a large percentage of the class, and the Home Owners' Loan Act preempts the plaintiffs' claims, but will not apply to many other class members. In addition, Wells Fargo contends that plaintiffs possess a higher level of sophistication than others in the putative class, as they have considerable experience in real estate and law and previous experience with home loans. Because of such experiences, Wells Fargo argues that plaintiffs have received adequate notice regarding the establishment of the escrow account.

Wells Fargo asserts further that plaintiffs are not adequate class representatives, because they acted in bad faith by overstating their income on the loan application (which Wells Fargo considers to be fraud). Wells Fargo now questions whether the plaintiffs were able to afford their loan and escrow payments in the first place, and argues that the plaintiffs' weakened claim for damages renders them poorly suited to represent the class.

Finally, Wells Fargo argues that allowing plaintiffs to amend the complaint to add class allegations would create manageability problems, as the court would have to conduct a loan-by-loan review to determine the applicable state law and the circumstances of each class member – including determining what deed of trust was signed by each borrower, whether each borrower received adequate notice that an escrow account was being

7

established in conformity with the security instrument that they signed, whether each class member was financially capable of meeting his/her contractual obligations but for the purported confusion created by the escrow account, whether any particular claims are time-barred, and whether each claim might be subject to other affirmative defenses, including federal preemption under HOLA and/or the National Bank Act.  Thus, Wells Fargo argues, the effect on judicial economy would render the proposed amendment futile.    In reply, plaintiffs argue that they are not challenging the "creation" of an escrow account, but rather are challenging what they claim was the unlawful application of money from the monthly mortgage payment into an escrow account.

Plaintiffs argue that the commonality requirement is satisfied, because the allegations center on classwide policies and practices that are common to the class. Plaintiffs contend that Wells Fargo has mischaracterized the proposed SAC when it argues that there is no commonality because the members of the proposed class utilize different security instruments.  Plaintiffs claim that their allegations are focused on Wells Fargo's "misappropriation of payments" after the creation of the escrow accounts, and assert that each member of the proposed class was therefore subjected to Wells Fargo's policy – which they appear to have identified as "holding borrowers in default after misappropriating the borrowers' loan payments."  Plaintiffs contend that variation in loan terms does not defeat commonality where the variations contain the same basic terms.

Plaintiffs argue further that their relative sophistication is irrelevant to the "policy" they are challenging here, as their claims are based on the misapplication of payments into an escrow account, not on whether plaintiffs can honestly say they did not receive notice of the creation of the escrow account.  For similar reasons, plaintiffs assert, the argument that the Bank has defenses unique to the plaintiffs is unavailing.  Plaintiffs contend that HOLA is a primary defense brought by Wells Fargo and overruled by the courts in a majority of the mortgage related suits brought against Wells Fargo, and that Wells Fargo is well aware of this occurrence.  Plaintiffs also contend that Wells Fargo's attempt to argue what plaintiffs claim are disputed questions of fact regarding plaintiffs' loan application is improper at this

stage of the proceedings.

Finally, plaintiffs concede that their claims are California-specific and agree that the class should be limited to borrowers in California (rather than being defined as a nation-wide class).  Thus, plaintiffs request that the court either read their motion as modified to limit the class to California borrowers, or deny the motion, without prejudice, to allow plaintiffs an opportunity to bring a new motion with the appropriate amendment.

The court finds that the motion must be DENIED.  The proposed class definition is unworkable, as it is not limited by time, and it in no way reflects what plaintiffs claim is the basis of their suit – that Wells Fargo "misappropriated" their loan payments or a portion of their loan payments.  In addition, plaintiffs have failed to identify the subsection of Rule 23(b) under which they seek certification.

With regard to the Foman factors, it does not appear that plaintiffs delayed unduly in seeking leave to amend, or that the proposed amendment is being sought in bad faith or for some impermissible purpose.  The main problem with the proposed amendment is that it is futile.

In general, courts determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion.  See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)).  Thus, a futile amendment would be one that would not survive a motion to dismiss for failure to state a claim.  Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 538 (9th Cir. 1989).

To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

Applying this standard, the court finds that the proposed amendment to add class allegations is futile because it does not allege facts sufficiently plausible to suggest that the requirements of Rule 23 can be met. As noted above, neither plaintiffs' motion nor the proposed SAC specifies the subsection of Rule 23(b) under which plaintiffs hope to obtain certification. That alone is enough to doom plaintiffs' effort. Apart from that however, plaintiffs have not proposed a class that is subject to common treatment under Rule 23(a), and have not alleged facts showing that their claims are typical of those of the absent class members.

Commonality requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550-51 (2011). Commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." Id. at 2551. The plaintiff must demonstrate "the capacity of classwide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." Id. (quotation omitted). To share sufficient factual commonality to satisfy the minimal requirements of Rule 23(a)(2), the common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Here, the plaintiffs assert that the putative class includes only those California borrowers who had a portion of their monthly mortgage payment applied to their escrow account, set up by Wells Fargo as a result of applying for a loan modification. Plaintiffs have conceded that the creation of a nationwide class would pose complex choice-of-law

10

issues, but even a California class will not prove manageable. The only "common" practice asserted is the alleged "policy" pursuant to which Wells Fargo sets up escrow accounts for any borrower who seeks a loan modification.

Because the members of the proposed class hold varying types of security instruments, the deeds of trust signed by the putative class members will differ with respect to whether there is a provision governing the establishment of escrow accounts. Plaintiffs' deed of trust was granted by World Savings, which was later acquired by Wells Fargo, but such deeds of trust represent only a fraction of the loans that Wells Fargo owns and services. In addition, as Wells Fargo pointed out in its opposition, some borrowers may have been placed in default for reasons other than the alleged policy, raising further individual issues of causation.

Plaintiffs argue that Wells Fargo's contention about the uncommon nature of the contracts that establish such escrow accounts is outweighed by the common practices alleged in the proposed amended complaint. Plaintiffs also contend that variation in loan terms is allowed if they involve the same basic terms, and that Wells Fargo has no contractual authority for the alleged practice of misappropriation. However, not only have plaintiffs failed to identify or explain what those "basic terms" might be, the proposed SAC is plainly based on the language of the specific deed of trust that secures plaintiffs' own loan.

For example, in the first cause of action for breach of contract, plaintiffs allege that Wells Fargo breached "Covenant 2B," "Covenant 3," and "Covenant 7" of the deed of trust, and also breached "Section 28." These allegations demonstrate that plaintiffs' claims are individualized. Similarly, the argument regarding "contractual authority" raises additional individualized issues, also defeating commonality.

It is undisputed that Wells Fargo has a policy of setting up escrow accounts when an application for loan modification is made. However, notwithstanding that the proposed SAC refers to "a policy" of opening "unwanted escrow accounts for all borrowers who apply for loan modifications," Proposed SAC ¶ 2; that it refers to the imposition of "unauthorized

11

escrow accounts," id. ¶ 7; and that it refers to "the fraudulent escrow account," id. ¶ 27; and that it also includes an entire section under the heading "Facts Regarding the Unauthorized Escrow Account," see id. ¶¶ 16-27, plaintiffs now take the position that they do not challenge the legality of the creation of these escrow accounts (and indeed, the court notes that plaintiffs' own deed of trust authorizes the creation of such an account). Instead, plaintiffs contend, what they challenge is the alleged "misappropriation" of funds."[1]

However, the only "policy" the plaintiffs allege is the policy of setting up escrow accounts for borrowers who apply for loan modifications. This is the "policy" they claim they became aware of at the hearing on the last motion to dismiss. Now, they argue that the common factual and legal question turns on whether Wells Fargo "misappropriated" loan payments and misapplied them into escrow accounts. However, given the lack of any clarity as to what this alleged "policy" consisted of, the proposed SAC does not sufficiently allege commonality.

Wells Fargo also argues that plaintiffs are atypical of the members of the putative class because their deed of trust is different from those of the others in the class, because they have real estate and legal experience, and because they are subject to laws and defenses unique to them. The commonality and typicality requirements of Rule 23(a) "tend to merge," but they "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 131 S.Ct. at 2551 n.5 (quotations and citation omitted).

Typicality exists if the named plaintiffs' claims are "reasonably coextensive" with

---

[1] In their reply to Wells Fargo's opposition to the present motion, plaintiffs state that they are seeking to "amend their underlying lawsuit to assert class allegations for [d]efendant's policy in misappropriating monthly mortgage payments and then placing a borrower into default as a result of the misappropriation." However, that is not what is alleged in the proposed SAC, which in addition defines the proposed class as "[a]ll persons who had an escrow account set up by Wells Fargo as a result of applying for a loan modification who then had a portion of their monthly mortgage payments, or a portion thereof, applied to the escrow account." Proposed SAC ¶ 33.

those of absent class members. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong. Id. Rather, the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. See General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982).

Generally, the arguments used to support typicality resemble those used to support commonality. Thus, in this case, if a "policy" of misappropriation did exist, the other class members would presumably be borrowers who were placed in default as a result of Wells Fargo's policy. Thus, the plaintiffs would have suffered the same or similar injury as the other members in the putative class. However, as explained above, the proposed SAC does not allege any facts showing a "policy" of misappropriation. Moreover, since each of the proposed class members may be subject to a different contract, and since certain members of the class may not have been placed in default or suffered injury as a result of the alleged "policy," but as a result of their own conduct, plaintiffs' claims cannot be considered typical of the claims of the proposed class.

By its very nature, any "misapplication" of loan payments would necessarily be done on an individualized basis. Because there are no facts alleged showing that Wells Fargo had a common "policy" of misappropriating loan payments and "misapplying" them to escrow accounts – only facts showing that Wells Fargo has a "policy" of establishing escrow accounts for borrowers who seek loan modifications – there are no facts showing that plaintiffs' claims are "typical."

## CONCLUSION

In accordance with the foregoing, plaintiffs' motion is DENIED. At the hearing on the present motion, plaintiffs' counsel referred to the alleged misappropriation as an "accounting glitch." He then went on to say, "I don't know if there's a class here," but that he wanted "to put them on notice" and then "do some discovery to see" whether Wells Fargo has been "siphoning off" $0.02 from each loan payment. He added that "discovery will determine the shape of the class allegations."

Plainly, by counsel's own admission, plaintiffs lack a factual basis for the class allegations. In the event that plaintiffs learn in discovery that there is a factual basis for class allegations, the denial of the present motion is without prejudice for plaintiffs to again seek leave to amend.

**IT IS SO ORDERED.**

Dated: August 1, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge