1   Matthew D. Mellen (SBN: 233350)
    Jessica Galletta (SBN: 281179)
2   MELLEN LAW FIRM
    411 Borel Avenue, Suite 230
3   San Mateo, California 94402
    Telephone:  (650) 638-0120
4   Facsimile:  (650) 638-0125

5   Attorneys for Plaintiffs
    JON ROSELL and JANE ROSELL
6

7                   UNITED STATES DISTRICT COURT
8          NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION
9

10  JON ROSELL and JANE ROSELL, individuals,      Case No.:  4:12-CV-06321-PJH

11                   Plaintiffs,

12          v.                                     SECOND AMENDED COMPLAINT

13  WELLS FARGO BANK, N.A., a business              1.  Breach of Contract
    entity; and DOES 1 through 50, inclusive,
14                                                  2.  Breach of the Covenant of Good
                     Defendants.                        Faith and Fair Dealing
15
                                                    3.  Violation of California Civil Code §
16                                                      2954

17                                                  4.  Unfair Competition – Violation of
                                                        Business and Professions Code
18                                                      § 17200 *et seq.*

19                                                 DEMAND FOR JURY TRIAL

                           __PRELIMINARY ALLEGATIONS__

20  1.      This is a case where Plaintiffs were **not late on their mortgage** when their lender began

21  to misapply their payments and count them late, before ultimately placing Plaintiffs in default for

22  those timely made payments. This is an egregious case of a lender mishandling a borrower's loan.

23  First, in the case at hand, Defendant paid Plaintiffs' property taxes and then charged Plaintiffs

24  fees associated with this payment, when Plaintiffs had already paid their own taxes.  Next,

25  Defendant created an escrow account on Plaintiffs' account, presumably as a result of the

26  property taxes mix-up, but then kept the account open even after receiving a refund for the

27  fronted taxes.  Then, despite having received that refund, Defendant kept the escrow account open

28  and applied Plaintiffs' regular monthly mortgage payments to the escrow account, instead of to

                                        1

Plaintiffs' loan balance.  Lastly, Defendant opened a mysterious subaccount and charged Plaintiffs fees for insurance which Defendant did not purchase.  Now, Defendant has begun to refuse Plaintiffs' payments and is threatening to foreclose on Plaintiffs' home!

## JURISDICTION AND VENUE

2.      This is an action asserting violations of California State Law.  Plaintiffs are homeowners who bring this action as a result of Defendant's unlawful conduct concerning a residential mortgage loan for the property located at 3910 Rockingham Drive, Pleasanton, California 94588.  Moreover, venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in the City of Pleasanton and County of Alameda.  Venue is therefore proper in the United States District Court, Northern District of California.

## PARTIES

3.      At all times relevant herein, Plaintiffs are informed and believe and thereon allege that WELLS FARGO BANK, N.A. (hereinafter "WELLS FARGO") is a diversified financial marketing and/or services entity engaged in residential mortgage banking and/or related businesses.  WELLS FARGO is the beneficiary under the promissory note and deed of trust during a substantial portion of the relevant events.  The promissory note which establishes Plaintiffs' and Defendant's relationship contains a provision for attorneys' fees.  Therefore, Plaintiffs are informed, believe, and thereon allege that WELLS FARGO regularly conducts business in the State of California.

4.      Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein under the fictitious names DOES 1 through 50, inclusive, and Plaintiffs will amend this complaint to allege such names and capacities at such time as they are ascertained.  Each fictitiously named Defendant is responsible in some manner for the wrongful acts complained of herein.

5.      This court has personal jurisdiction over the parties as all Defendants engage in business within the State of California.  Defendants' business involves providing mortgage loans and related services to consumers in the State of California.

6.      At all relevant times herein and presently, Plaintiff resides in, and the property is located in the State of California, County of Alameda.

**AGENCY ALLEGATIONS**

7.      Plaintiffs are informed, believe and thereon allege that at all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each remaining Defendants.  Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest.  Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

**STATEMENT OF FACTS**

8.      In or around January 1990, Plaintiffs purchased the Property, obtaining financing for the Property through Great Western Bank.  Plaintiffs executed a promissory note and deed of trust in favor of Great Western to secure the loan (hereinafter "the Loan").  The Loan was refinanced with World Savings in 2002.  Thereafter, Defendant WELLS FARGO acquired Plaintiffs' loan after it acquired Wachovia Bank, who had itself acquired the Loan from World Savings Bank. The loan agreement has a provision for attorneys' fees.

9.      Throughout the life of the loan, and almost every month, Plaintiffs paid a monthly payment which was more than their required minimum mortgage.  Plaintiffs intentionally paid more than the minimum required mortgage payments so that the extra monies would be applied to the principal which would allow Plaintiffs to pay off the Loan sooner than the agreed upon maturity date.

10.     In or around October 2009, Plaintiffs were current on their loan when they contacted WELLS FARGO about financing options after they had seen an advertisement on mortgage financing.  During that conversation, WELLS FARGO informed Plaintiffs that they could be candidates for a loan modification with a better interest rate or monthly mortgage payment and that Plaintiffs should submit a long list of financial documents.  However, despite the fact that Plaintiffs repeatedly submitted the same financial paperwork to Wells Fargo, Wells Fargo closed Plaintiffs' loan modification file, indicating that they were "unable to process their request due to non-receipt of required documentation or information."  Consequently, as Plaintiffs were never

3

successful in even completing a loan modification application, they certainly never completed or signed any final loan modification documents. At that point in time, Plaintiffs terminated their attempts to modify their loan.

11.     Beginning in early 2010 and for reasons unknown to Plaintiff, WELLS FARGO began returning portions of Plaintiffs' monthly payments which were in excess of the minimum required payment. The returns were sporadic and impossible to track on statements, thereby making it impossible for Plaintiffs to understand the problem. Thus, Plaintiffs continued submitting their monthly payments in the manner they had done thus far.

### FACTS REGARDING THE UNAUTHORIZED ESCROW ACCOUNT

12.     In February 2011, a mysterious escrow account appeared for the first time on Plaintiffs' monthly statement. The statement indicated there was a balance of approximately $8,055.39 in the account. Around the same time, within a matter of days actually, Plaintiffs received a letter from Wells Fargo which indicated that Wells Fargo had attempted to pay Plaintiffs' property taxes and discovered that the taxes were already paid. However, Plaintiffs had always paid their own property taxes in a timely manner and never requested that Wells Fargo pay the taxes on their behalf. Two more undated letters arrived shortly thereafter, showing that Defendant Wells Fargo had charged Plaintiffs' account for the taxes and then refunded Plaintiffs what appeared to be the tax amount.

13.     Plaintiffs immediately contacted WELLS FARGO to resolve the accounting error and were informed for the first time that Defendant was claiming that Plaintiffs loan had been modified and that the escrow account was created when Plaintiffs modified their loan in or around October 2009. Plaintiffs were shocked because they had never even completed a loan modification application process and their payment had not changed. So, Plaintiffs informed Defendant of this fact and instructed Defendant to remove the escrow account since they had not consented to this account.

14.     Not only did Defendant fail to remove the escrow account, Plaintiffs would later learn that Defendant transferred $0.02 per month from Plaintiff's payment to this mysterious account, whose balance changed monthly with the highest being $9,255.84 and the lowest being $5,132.83

15.     On January 18, 2012, Plaintiffs received a letter which stated, "tax escrow account…has been cancelled."  In addition, the letter also stated that Plaintiffs were responsible for the next tax installment due in March 2012.  Plaintiffs paid this tax installment.  However, when March finally arrived, despite the fact that Plaintiffs paid their property taxes for the next installment, Defendant again paid Plaintiffs' property taxes and increased the balance due on the escrow account.

16.     In response, Plaintiffs obtained proof of their own payment of the property taxes on their Property from the County Tax Collector's office and also obtained proof of the refund checks, which had been sent to WELLS FARGO.  The County Tax Assessor gave Plaintiffs copies of checks which were sent to WELLS FARGO refunding duplicate tax payments.

17.     Despite this fact, WELLS FARGO failed to acknowledge receipt of such monies and refused to eliminate the balance on the escrow account.  Plaintiff believes that Defendant WELLS FARGO to this day continues to misapply Plaintiffs' mortgage payments to the fraudulent escrow account.

18.     Defendant's application of a portion of Plaintiffs' monthly payment into the escrow account continued until April 20, 2012, when Plaintiffs' entire $3,700.00 payment was mysteriously not applied to Plaintiffs' account pursuant to the loan agreement.  This time, instead of applying Plaintiffs' payment to the principal and interest on Plaintiffs' loan, Defendant failed to apply Plaintiffs' payment to *any* account.  Rather, as indicated in Plaintiffs' mortgage statement for that month, Plaintiffs' payment was categorized as "Unapplied Funds" and Plaintiffs were still considered due for their April 2012 payment.  Thus, according to WELLS FARGO, the April Payment was **not** made and a late charge of $181.28 was applied to the balance due.  It must be noted that, up until this time, Plaintiffs had never missed a payment to this point and had made every payment in full and on time.

19.     In May 2012, the very next month, Plaintiffs' $3,625.63 payment was again categorized as "Unapplied Funds" rather than applied to Plaintiffs' principal and interest.  At the same time, Defendant Wells Fargo withdrew an amount from the unapplied funds and applied it to Plaintiffs' April 2012 payment it considered due and also made a $665.64 escrow payment.  Once again,

5

despite the fact that Plaintiffs' made their May 2012 payment, and had never missed a payment, Defendant mis-categorized Plaintiffs' payments, applied the payments to unknown and unauthorized accounts, and considered Plaintiffs late for that month, charging Plaintiffs another $181.28 late fee.

20.     Again, in June 2012 Plaintiffs' timely full monthly mortgage payment was categorized as Unapplied Funds, and a mysterious transfer from this category was applied to a previous monthly mortgage payment Plaintiffs had already made and the mysterious escrow account. Thus, once again, Plaintiffs' were not credited for their timely made monthly mortgage payment and were considered late for June 2012. This procedure has continued each month, with Defendant improperly applying Plaintiffs' mortgage payments to their account and charging them improper fees. Thus, even though Plaintiffs paid the full mortgage each month, their account was labeled as late, fees were charged and additional interest accrued each month. Consequently, Plaintiffs' near perfect credit has been completely destroyed. This was completely shocking to Plaintiffs since Plaintiffs have almost always paid over and above their required minimum mortgage payments and always paid their mortgage on time. And WELLS FARGO continued to bill Plaintiffs, through the creation of a fictitious escrow account, for taxes which the bank claims to have paid, when clients had already paid all their property taxes.

21.     Despite Plaintiffs' on-time payments and Defendant's written statements that the escrow account is cancelled, WELLS FARGO continues to hold Plaintiffs' mortgage payments in suspense and charge late fees.

22.     In addition, in July 2012, Plaintiffs began receiving Notices of Intent to Foreclose on Plaintiffs' property, despite Plaintiffs' timely monthly payments and compliance with the loan agreement.

23.     At some point, Plaintiffs were told by Wells Fargo representative Lori Nora that Wells Fargo created the escrow account when, as it claims, Plaintiffs modified their loan in or around October 2009. Plaintiffs have further discovered that hidden within the fraudulent escrow account is a sub-escrow account paying for an insurance policy which Plaintiffs never agreed to since Plaintiffs have maintained homeowners' insurance on their Property for more than 22 years.

Plaintiffs informed Defendant of this fact but were assured by Defendant's representative that the unwarranted insurance policy would be removed.  However, Plaintiffs are informed and believe that the insurance policy has not been removed.

**FACTS PERTAINING TO WELLS FARGO'S REFUSAL OF PLAINTIFFS' PAYMENTS**

24.     From July 2012, when Plaintiffs first began receiving NOIs, until November 2012, Plaintiffs continued making their regular monthly mortgage payment.  However, beginning in November 2012, Defendant Wells Fargo began refusing Plaintiffs' regular monthly mortgage payments.

25.     On or about November 27, 2012, Plaintiffs went to their local Wells Fargo branch and attempted to submit their regular monthly mortgage payment, but their payment was rejected.  At that time, Logan Almeida, a Wells Fargo employee, advised Plaintiffs that they were 45 days past due on their mortgage.  Plaintiffs informed Mr. Almeida that they were not late, so the clerk made a phone call to inquire about how to handle the situation.  Then, Mr. Almeida advised Plaintiffs that they had to submit all payments via telephone, so Plaintiffs attempted to pay via telephone while they were still at the branch location.  However, when Plaintiffs attempted to make their regular payment via telephone, the Wells Fargo employee (who refused to give Plaintiffs her name) advised Plaintiffs that they were approximately $13,000.00 past due.  Plaintiffs advised this Wells Fargo employee that they have made every payment and are not past due, but the individual would not accept Plaintiffs' payment and instead advised them to contact Wells Fargo's legal department.

26.     On or about Saturday, December 29, 2012, Plaintiffs again went to their local branch to make their regular monthly mortgage payment.  Once again, however, the bank representatives refused to accept Plaintiffs' regular monthly mortgage payment, maintaining that Plaintiffs were in default.  Plaintiffs advised this Wells Fargo employee that they have made every payment and are not past due, but the individual would not accept Plaintiffs' payment and instead advised them to contact Wells Fargo's legal department.

27.     As a result of Defendant's conduct, Plaintiffs' credit has been destroyed, their mortgage balance has been completely inflated with fees and charges, and Plaintiffs face the imminent loss

of their home to foreclosure.  With no other recourse and an imminent foreclosure looming, this lawsuit follows.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

28.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

29.     Plaintiffs originally purchased the Property in 1990.  Defendant WELLS FARGO became the successor-in-interest to the loan agreement when it acquired the loan and interest under the loan from Wachovia Bank, who had acquired its interest in the Loan from World Savings Bank. Plaintiffs are informed, believe, and thereon allege that WELLS FARGO breached this agreement when it continually misapplied Plaintiffs' payments and counted them late when Plaintiffs were in fact making payments on time as required by the mortgage statement.

30.     A cause of action for breach of contract lies where (1) a contract exists; (2) plaintiff performed under the contract; (3) defendant breached its obligations under the contract; and (4) plaintiff has been damaged from the breach.  Plaintiffs are informed and believed that Defendant WELLS FARGO breach the loan agreement, specifically the Deed of Trust, in the following ways:

31.     First, pursuant to Covenant 3 of the Deed of Trust, Wells Fargo would apply each of borrower's payments in the order indicated pursuant to that section.  Specifically, lender agreed to apply Borrower's payments in the following manner:

> First, to prepayment charges due under the Secured Notes;

> Second, to pay any advances due to Lender under the Security Instrument;

> Third, to pay the amounts due to Lender under Paragraph 2 [of the Deed of Trust];

> Fourth, to pay interest due under the Secured Notes;

> Fifth, to pay deferred interest due under the Secured Notes;

> Sixth, to pay principal due under the Secured Notes;

> Last, to pay late charges due under the Secured Notes.

> See Deed of Trust, Covenant 3.

8

32.     Plaintiffs are informed and believe that Defendant Wells Fargo breached Covenant 3 of the Deed of Trust by failing to apply Plaintiffs' payments as indicated under the Deed of Trust. Instead, rather than apply Plaintiffs' payments pursuant to the terms indicated, Defendant Wells Fargo placed Plaintiffs' payments into an unauthorized escrow account.

33.     In addition, pursuant to Covenant 7 of the Deed of Trust, in the event the borrower does not keep his promises or agreements made in the Security Agreement, Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's right in the Property, including payment of property taxes on borrower's behalf.  Pursuant to Covenant 3 of the Deed of Trust, Wells Fargo would apply borrower's payments in the order indicated pursuant to that section, including, second, any advances due to Lender under the Security Instrument and, third to escrow accounts created under the Deed of Trust.  Plaintiffs are informed and believed that Defendant WELLS FARGO breached the loan agreement when it paid Plaintiffs' property taxes which Plaintiffs had already paid and then applied Plaintiffs' payments to an escrow fund, rather than to principal and interest due under the Note.

34.     In addition, pursuant to Covenant 7 of the Deed of Trust, in the event the borrower does not keep his promises or agreements made in the Security Agreement, Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's right in the Property, including purchasing insurance required under the Deed of Trust. Pursuant to Covenant 3 of the Deed of Trust, Wells Fargo would apply borrower's payments in the order indicated pursuant to that section, including, second, any advances due to Lender under the Security Instrument and, third to escrow accounts created under the Deed of Trust.  Plaintiffs are informed and believed that Defendant WELLS FARGO breached the loan agreement when it paid purchased insurance on Plaintiffs' behalf, when Plaintiffs had already purchased their own insurance, and then applied Plaintiffs' payments to an escrow fund, rather than to principal and interest due under the Note.

35.     In addition, pursuant to Covenant 2(B) of the Deed of Trust, no escrow shall be required except upon written demand by Lender and solely for purposes of paying, among other items, yearly taxes the Lender pays on behalf of borrower.  Plaintiffs are informed and believed that Defendant WELLS FARGO breached the Deed of Trust when it created an escrow account for

Plaintiffs' loan agreement when Plaintiffs were current on their property taxes and maintained insurance for the property.

36.     In addition, pursuant to Section 28 of the Deed of Trust, Borrower is in breach if he does not pay the full amount of each regularly scheduled payment on the date it is due.  Pursuant to that same section, if there is a breach of duty by borrower, Lender may invoke any remedy as permitted under any applicable, including charging Plaintiff late fees.  Plaintiffs are informed and believe that Defendant WELLS FARGO breached the loan agreement for every month it charged Plaintiffs late fees when Plaintiffs had submitted their monthly mortgage payments, including but not limited to, the months of March 2012 and on.

37.     By reason of Defendants' breach of contract as alleged herein, Plaintiffs have suffered actual damages including, but not limited, increased late fees and arrears.  Moreover, Plaintiffs are now in danger of losing their home and have been forced to secure the services of an attorney in order to prosecute this lawsuit.  Plaintiffs are also in danger of losing their employment because of the allegations of late mortgage payments and intent to foreclose action.

## SECOND CAUSE OF ACTION
### Breach of the Covenant of Good Faith and Fair Dealing

38.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

39.     Defendant's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law.  This covenant creates an obligation in Defendants not to hinder or prevent Plaintiff's ability to perform under the contract or receive the benefit of the contract.

40.     Plaintiffs originally purchased the Property in 1990.  Defendant WELLS FARGO became the successor-in-interest to the loan agreement when it acquired the loan and interest under the loan from Wachovia Bank, who had acquired its interest in the Loan from World Savings Bank.  Pursuant to the loan agreement, Plaintiffs have an obligation to make monthly payments and the owner or holder of the note has the implicit obligation not to hinder or prevent Plaintiffs' ability to make payments on his loan agreement.  Likewise, the owner or holder of the note has an

obligation to deal fairly and in good faith with Plaintiffs.  Plaintiffs are informed, believe, and thereon allege that WELLS FARGO breached the covenant of good faith and fair dealing when it refused Plaintiffs' regular monthly mortgage payments.

41.     Specifically, pursuant to Covenant 1 of the Deed of Trust, Borrower promises to "pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes."  Therefore, implicit in this term, Defendant had an obligation not to hinder Plaintiffs' performance or prevent Plaintiffs' ability to make payments.

42.     Until November 2012, Plaintiffs submitted regular and timely mortgage payments in compliance with their loan agreement.  However, on or about November 27, 2012, Plaintiffs again attempted to submit their regular monthly mortgage payment but were prevented from so doing.  In fact, Plaintiffs were first told that they had to make telephone payments.  However, when Plaintiffs attempted to do so, Plaintiffs were told that they could not make their regular monthly payment because they were past due for approximately $13,000.00.  This is, in fact, not true, as Plaintiffs had submitted their regular monthly mortgage payments in full and on time since they entered into the loan agreement.  Thus, Defendant's actions in refusing Plaintiffs' payments is a breach of the covenant of good faith and fair dealing implied into the loan agreement between the parties.

43.     As a result of Defendant's conduct, Plaintiffs' credit has been detrimentally impacted and Plaintiff is facing the imminent foreclosure of his property.  Plaintiff alleges that this conduct was done in bad faith and is a breach of the covenant of good faith and fair dealing implied in the loan agreement with Defendant WELLS FARGO.

44.     Defendant's interference with the Plaintiffs' contractual rights resulted in various harms, including but not limited to the destruction of Plaintiffs' credit and the accumulation of excessive arrears on the Loan.  This harm was intentional and foreseeable from the Defendant's interference.

//

//

//

### THIRD CAUSE OF ACTION
### Violation of Civil Code § 2954

45.     Plaintiffs incorporate all allegations of this complaint and re-allege them as though they were fully set forth herein.

46.     California Civil Code § 2954(a) provides that: no impound, trust, or other type of account for payment of taxes on the property, insurance premiums, or other purposes relating to the property shall be required as a condition of… a deed of trust or mortgage on real property containing only a single-family, owner-occupied dwelling, except: (A) where required by a state or federal regulatory authority, (B) where a loan is made, guaranteed, or insured by a state or federal governmental lending or insuring agency, (C) upon a failure of the purchaser or borrower to pay two consecutive tax installments on the property prior to the delinquency date for such payments, (D) where the original principal amount of such a loan is (i) 90 percent or more of the sale price, if the property involved is sold, or is (ii) 90 percent or more of the appraised value of the property securing the loan, (E) whenever the combined principal amount of all loans secured by the real property exceeds 80 percent of the appraised value of the property securing the loans, (F) where a loan is made in compliance with the requirements for higher priced mortgage loans established in Regulation Z, whether or not the loan is a higher priced mortgage loan, or (G) where a loan is refinanced or modified in connection with a lender's homeownership preservation program or a lender's participation in such a program sponsored by a federal, state, or local government authority or a nonprofit organization.

47.     Plaintiffs are informed and believe that Defendant Wells Fargo Bank violated Civil Code § 2954 by creating an impound escrow account for Plaintiffs loan account when Plaintiffs did not meet any of the criteria under Civil Code § 254.

48.     Plaintiffs originally purchased the Property in 1990.  Thereafter, Plaintiffs' loan was acquired by Defendant Wells Fargo.  Specifically, after Plaintiffs obtained their loan with World Savings Bank, World Savings Bank was acquired by Wachovia Home Mortgage, which later became a division of Wells Fargo Bank.  Thus, Defendant became the beneficial interest holder and servicer of Plaintiffs' loan.

49.     In or around October 2009, Plaintiffs were current on their loan when they contacted Wells Fargo about financing options after they had seen an advertisement on mortgage financing. At that time, Plaintiffs inquired about a loan modification but never actually submitted a complete loan modification application to Wells Fargo.  Thereafter, Plaintiffs continued submitting their monthly mortgage payments, in full and on time.

50.     In or around February 2011, however, a mysterious escrow account appeared for the first time on Plaintiffs' monthly statement.  The statement indicated there was a balance of approximately $8,055.39 in the account.  Around the same time, or within a matter of days, Plaintiffs received a letter from Wells Fargo which indicated that Wells Fargo had attempted to pay Plaintiffs' property taxes and discovered that the taxes were already paid.  However, Plaintiffs had always paid their own property taxes in a timely manner and never requested that Wells Fargo pay the taxes on their behalf.  Two more undated letters arrived shortly thereafter, showing that Defendant Wells Fargo had charged Plaintiffs' account for the taxes and then refunded Plaintiffs what appeared to be the tax amount.

51.     Therefore, Plaintiffs immediately contacted WELLS FARGO to resolve the accounting error and were informed for the first time that the escrow account was created when Plaintiffs began inquiring about a loan modification in October 2009.   Plaintiffs informed Defendant of this fact and instructed Defendant to remove the escrow account since they had not consented to this account.  As of today's date, however, Defendant has still yet to remove the escrow account from Plaintiffs' loan account and continues to apply a portion of Plaintiffs' payments into the escrow account, despite the fact that Plaintiffs have always paid their own property taxes and insurance.  As a result of Defendant's actions, Plaintiffs' account has held a default status, Plaintiffs have faced the destruction of their credit, and Plaintiffs now face the possibility of losing their property to foreclosure.

### FOURTH CAUSE OF ACTION
**Unfair Competition – Violation of Business and Professions Code §§17200 *et seq*.**

52.     Plaintiff incorporates all allegations of this complaint and re-alleges them as though they were fully set forth herein.

53.     Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 *et seq.* California Business and Professions Code § 17200 *et seq.* incorporates and provides a basis for enforcement of violations of other statutes and laws and those violations as a business practice.

54.     Plaintiff claims that Defendants' conduct satisfied the unfair prong, because it is unfair to take refuse to take a borrower's payments and then place a borrower's loan in default and sell the property at foreclosure sale.

55.     Likewise Plaintiff claims that Defendants' conduct satisfied the unfair prong, because it is unfair to attempt to circumvent California's laws regarding the procedure governing non-judicial sales and then attempt to sell a borrower's property at foreclosure sale.

56.     Plaintiff alleges that Defendants' conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 *et seq.* California Business and Professions Code § 17200 *et seq.* borrows violations from other statutes and laws and makes them unlawful to engage in as a business practice.

57.     As a result of Defendant's wrongful conduct, Plaintiff has suffered various injuries according to proof at trial, including but not limited to the destruction of their credit.

58.     Plaintiff, therefore, seeks injunctive relief enjoining Defendant from engaging in the unfair business practices described herein.

59.     Likewise, Plaintiff was injured and is entitled to actual damages including but not limited to, loss of money and property, loss of reputation and goodwill, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.

60.     Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.  Consequently, Plaintiffs' also seek exemplary and punitive damages in an amount sufficient to punish Defendant's wrongful conduct and to deter future misconduct.

//

//

## **DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

WHEREFORE, Plaintiffs JON ROSELL and JANE ROSELL respectly demand a trial by jury.  Plaintiff also respectfully prays for judgment and order against Defendants as follows:

1.  That judgment is entered in Plaintiffs' favor and against Defendant;

2.  For an order requiring Defendant to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3.  For a temporary restraining order, preliminary and permanent injunction preventing Defendant, or anyone acting in concert with them from causing the Property to be sold, assigned, transferred to a third-party, or taken by anyone or any entity;

4.  For a preliminary and permanent injunction preventing Defendant, or anyone acting in concert with them from seeking to evict Plaintiffs until the claims herein are resolved:

5.  For damages, disgorgement, and injunctive relief;

6.  For compensatory and statutory damages, attorneys' fees, and costs according to proof at trial;

7.  For exemplary and punitive damages in an amount sufficient to punish Defendant's wrongful conduct and deter future misconduct;

8.  For such other and further relief as the Court may deem just and proper.

DATED: March 26, 2014                    Respectfully submitted,

                                         MELLEN LAW FIRM


                                          _/s/ Jessica Galletta_____
                                         Jessica Galletta, Esq.
                                         Attorneys for Plaintiff
                                         JON ROSELL
                                         JANE ROSELL