Michael Rapkine (#222811)
mrapkine@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
  CAMPBELL & TRYTTEN LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Attorneys for Defendant
WELLS FARGO BANK, N.A.
("Wells Fargo")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| JON ROSELL and JANE ROSELL, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a business entity; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 3:12-CV-06321-JD<br><br>[Assigned to the Hon. James Donato]<br><br>**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed with Request for Judicial Notice]<br><br>Date: June 25, 2014<br>Time: 9:30 a.m.<br>Ctrm: 11 (19th Floor) |

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 25, 2014 at 9:30 a.m. in courtroom 11 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable James Donato presiding, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will move to dismiss the first through fourth claims in the second amended complaint, pursuant to FRCP 12(b)(6).

/ / /

/ / /

Grounds for the 12(b)(6) motion are as follows:

1. **First Claim: Breach of Contract**

   **Second Claim: Breach of the Implied Covenant of Good Faith & Fair Dealing**

   Plaintiffs fail to state a claim for breach of contract or breach of the implied covenant because: (i) contrary to plaintiffs' allegations, Wells Fargo gave written notice to plaintiffs before establishing the escrow account in question, in accordance with Covenant 2(B) of the deed of trust; (ii) once the escrow account was established, Wells Fargo applied plaintiffs' monthly mortgage payments in the order set forth by Covenant 3 of the deed of trust; and (iii) Wells Fargo complied with all other provisions of the loan contract, and plaintiffs have failed to allege sufficient facts to the contrary.

2. **Third Claim: Violation of Civil Code § 2954(a)**

   Plaintiffs fail to state a claim for violation of Civil Code § 2954(a) because plaintiffs missed two consecutive property tax payments, thereby allowing Wells Fargo to require the imposition of an escrow account for tax payments and insurance.

3. **Fourth Claim: Violation of Bus. & Prof. Code § 17200, *et seq*.**

   Plaintiffs fail to state a claim for unfair competition because: (i) judicially noticeable documents demonstrate that Wells Fargo did not violate Civil Code § 2954; (ii) to the extent this fourth cause of action mirrors the contract claims, it should be disregarded as a "dressed-up" contract claim; and (iii) plaintiffs seek money damages, which are not recoverable under the UCL.

///
///
///
///
///
///
///

The motion to dismiss is based upon this notice, the memorandum of points and authorities, the second amended complaint ("SAC" or "complaint"), the accompanying request for judicial notice, and on Wells Fargo's argument at the hearing.

Respectfully submitted,

Dated: May 5, 2014

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: /s/ Michael Rapkine
Michael Rapkine
mrapkine@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A.
("Wells Fargo")

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

1. INTRODUCTION ..................................................................................................... 1

2. SUMMARY OF THE SECOND AMENDED COMPLAINT AND
   JUDICIALLY NOTICEABLE DOCUMENTS ......................................................... 2

3. WELLS FARGO DID NOT VIOLATE CIVIL CODE SECTION 2954(A) ................... 3

4. WELLS FARGO DID NOT BREACH THE LOAN CONTRACT OR
   VIOLATE ANY IMPLIED COVENANT OF THIS AGREEMENT ............................ 5

5. THE UCL CLAIM IS CONCLUSORY AND MERITLESS ...................................... 7

   A. Plaintiffs' UCL Claim Is Entirely Derivative In Nature And Therefore
      Falls By The Wayside ................................................................................... 7

   B. A Litigant Cannot Manufacture A Tort From A Contract Claim ...................... 8

   C. Plaintiffs Seek Improper Relief In Connection With The UCL Claim ............. 9

6. CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abrego v. The Dow Chem. Co.*,
  443 F.3d 676 (9th Cir. 2006) ...................................................................................................5

*Baner v. Wells Fargo Bank*,
  2012 U.S. Dist. LEXIS 103737, *14, 33-36 (N.D. Cal. July 23, 2012) ................................9

*Ennis v. Mortgage Tree Lending, Inc.*,
  2009 U.S. Dist. LEXIS 101255, *12 (E.D. Cal. Oct. 30, 2009) ............................................8

*Kelomar, Inc. v. Kulow*,
  2009 U.S. Dist. LEXIS 106786, *4-7 (S.D. Cal. Nov. 12, 2009) ..........................................8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................................................................5

*Shoop v. Deutsche Bank Nat'l Trust Co.*,
  2010 U.S. Dist. LEXIS 64153, *24 (E.D. Cal. June 28, 2010) .............................................8

**STATE CASES**

*Aas v. Superior Court*,
  24 Cal. 4th 627 (2000) .......................................................................................................8, 9

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ..............................................................................................................8

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ............................................................................................................9

*Khoury v. Maly's of California, Inc.*,
  14 Cal. App. 4th 612 (1993) ...................................................................................................8

*Korea Supply Company v. Lockheed Martin Corporation*,
  29 Cal. 4th 1134 (2003) .....................................................................................................8, 9

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................................................................7

Cal. Civ. Code § 2954 ........................................................................................................1, 4, 7, 8

Cal. Civ. Code § 2954(a) ...................................................................................................1, 3, 4, 7

Cal. Civ. Code § 2954(a)(1) ..........................................................................................................3

**RULES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. **INTRODUCTION**

This action arises from a refinance loan that plaintiffs obtained from Wells Fargo's predecessor (World Savings Bank, FSB)[1] and plaintiffs' subsequent default. The crux of the case rests on the allegation that Wells Fargo established an improper escrow account in early 2011, and then proceeded to "misapply" a portion of plaintiffs' mortgage payments to this account instead of towards principal and interest. (e.g., SAC ¶¶ 1, 12-14, 17). Based on these allegations, plaintiffs contend that Wells Fargo has breached the loan contract and violated Civil Code § 2954(a), which prohibits the mandatory imposition of impound accounts except under certain circumstances.

However, the claims in the operative complaint suffer from fatal shortcomings, as detailed in Sections 3 through 5 of this motion. Among other things, the allegation that Wells Fargo violated Civil Code § 2954(a) fails as a matter of law, because judicially noticeable tax records show that plaintiffs missed two consecutive property tax payments in 2009-2010, thereby allowing the bank to set up an impound account under this statute. Similarly, plaintiffs' contract-based claims are eviscerated by judicially noticeable documents, which reveal that Wells Fargo provided plaintiffs with written notice that the bank intended to establish an escrow account, in conformity with Covenant 2(B) of the subject deed of trust. Finally, the UCL claim is defective because it is entirely derivative in nature, based upon the Section 2954 and contract claims. Furthermore, the unfair competition allegations should be disregarded as mere surplussage to the extent they mirror the contract causes of action, for a litigant cannot manufacture a tort from a contract-based claim.

///

---

[1] World Savings Bank, FSB changed its name to "Wachovia Mortgage, FSB" and later merged into Wells Fargo Bank, N.A. Attached to the accompanying Request for Judicial Notice ("RJN") as Exhibits A through D are documents issued by the Office of Thrift Supervision, the Office of the Comptroller of the Currency, and the FDIC that evidence this name change and subsequent merger. Paragraphs 8 and 48 of the SAC also acknowledge this corporate transition and clarify that Wells Fargo "became the beneficial interest holder and servicer of Plaintiffs' loan." For purposes of this motion, World Savings will hereinafter be referred to as "Wells Fargo."

## 2. SUMMARY OF THE SECOND AMENDED COMPLAINT AND JUDICIALLY NOTICEABLE DOCUMENTS

On or around February 15, 2007, plaintiffs obtained a $772,000 refinance loan[2] from Wells Fargo's predecessor, World Savings Bank, FSB. The terms of the loan were memorialized by a promissory note and secured by a deed of trust against 3910 Rockingham Drive, Pleasanton, California. (SAC ¶¶ 2, 8). A true and correct copy of the recorded deed of trust signed by plaintiffs is attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit E.

Plaintiffs allege that around February 2011, "a mysterious escrow account appeared for the first time on [their] monthly statement." (SAC ¶ 12). It is further alleged that this escrow account had a balance of approximately $8,055.39 and that it should not have been established because "[p]laintiffs had always paid their own property taxes in a timely manner and never requested that Wells Fargo pay the taxes on their behalf." (SAC ¶ 12).[3]

According to plaintiffs, they "immediately contacted WELLS FARGO to resolve the accounting error" and Wells Fargo refused to remove the escrow account, due to the bank's mistaken impression that plaintiffs had received a loan modification in October 2009. (SAC ¶ 13). The pleadings add that because this forced impound account remained in place, portions of plaintiffs' monthly mortgage payments were applied to pay down the escrow account, instead of being applied towards principal and interest on the loan. (e.g., SAC ¶ 14: "Not only did Defendant fail to remove the escrow account, Plaintiffs would later learn that Defendant transferred $0.02 per month from Plaintiffs' [mortgage] payment to this mysterious account. . .").

It is further alleged that "WELLS FARGO to this day continues to misapply Plaintiffs'

---

[2] The pleadings reference an earlier refinance date. (SAC ¶ 8: "The Loan was refinanced with World Savings in 2002."). Defense counsel has not confirmed whether this 2002 transaction actually took place; however, the issue is irrelevant for purposes of this motion, since a 2002 loan contract would be superseded by the 2007 refinance.

[3] However, contrary to the allegations in the operative complaint, judicially noticeable documents eviscerate the contention that plaintiffs had made timely property tax payments leading up to 2011, or that plaintiffs were surprised by a "mysterious escrow account." As briefed in further detail in Sections 3 and 4 of this motion, plaintiffs missed two consecutive tax payments in 2009-2010, requiring the imposition of an impound account. (RJN, Exh. H ("Alameda County Secured Property Tax Statement")). Furthermore, Wells Fargo sent plaintiffs written notice on January 4, 2011 that it would be establishing an escrow account, in conformity with Covenant 2(B) of the subject deed of trust. (RJN, Exhs. F and G).

1  mortgage payments to the fraudulent escrow account." (SAC ¶ 17). Specifically, the complaint
2  stresses that plaintiffs made their $3,700 monthly mortgage payment in April 2012, yet because a
3  portion was "misapplied" to the escrow account, the remainder of plaintiffs' payment was held in
4  suspense as "unapplied funds" and plaintiffs were assessed a $181.28 late fee. (SAC ¶ 18). The
5  complaint goes on to allege how this pattern continued, with a portion of plaintiffs' monthly
6  payments being "misapplied", leading to the assessment of late fees. (SAC ¶¶ 19-21).

As a result of these purported events, plaintiffs built up an arrearage on the subject loan, and they received a "Notice of Intent to Foreclose" letter in July 2012. (SAC ¶ 22). In November 2012, Wells Fargo refused to accept plaintiffs' mortgage payments entirely, and insisted on full reinstatement of the delinquency, which included monthly late fees. (SAC ¶¶ 24-27). Plaintiffs now bring this action to enjoin a possible foreclosure and to recover various damages for alleged emotional distress and harm to their credit.

Based on the foregoing, Wells Fargo is named in claims for breach of contract, breach of the implied covenant, alleged violation of Civil Code § 2954(a), and unfair competition. As detailed below, not a single claim has merit.

### 3. **WELLS FARGO DID NOT VIOLATE CIVIL CODE SECTION 2954(A)**

To begin with, plaintiffs allege in the third cause of action that by unilaterally establishing an escrow account with respect to the subject loan, Wells Fargo has violated Civil Code § 2954(a)(1) (SAC ¶¶ 45-51). This statute prohibits a lender from the mandatory imposition of an escrow account to pay the borrower's property taxes or insurance, unless one of several circumstances are present. As cited in paragraph 46 of the SAC, Civil Code § 2954(a)(1) provides as follows (emphasis added):

> **No impound, trust, or other type of account for payment of taxes on the property, insurance premiums, or other purposes relating to the property shall be required as a condition of a real property sale contract or a loan secured by a deed of trust or mortgage on real property containing only a single-family, owner-occupied dwelling, except:** (A) where required by a state or federal regulatory authority, (B) where a loan is made, guaranteed, or insured by a state or federal governmental lending or insuring agency, (C) **upon a failure of the purchaser or borrower to pay two consecutive tax installments on the property prior to the delinquency date for such payments,**

> (D) where the original principal amount of such a loan is (i) 90 percent or more of the sale price, if the property involved is sold, or is (ii) 90 percent or more of the appraised value of the property securing the loan, (E) whenever the combined principal amount of all loans secured by the real property exceeds 80 percent of the appraised value of the property securing the loans, (F) where a loan is made in compliance with the requirements for higher priced mortgage loans established in Regulation Z, whether or not the loan is a higher priced mortgage loan, or (G) where a loan is refinanced or modified in connection with a lender's homeownership preservation program or a lender's participation in such a program sponsored by a federal, state, or local government authority or a nonprofit organization. Nothing contained in this section shall preclude establishment of such an account on terms mutually agreeable to the parties to the loan, if, prior to the execution of the loan or sale agreement, the seller or lender has furnished to the purchaser or borrower a statement in writing, which may be set forth in the loan application, to the effect that the establishment of such an account shall not be required as a condition to the execution of the loan or sale agreement, and further, stating whether or not interest will be paid on the funds in such an account.

In the present case, plaintiffs contend that none of the exceptions to Civil Code § 2954(a) apply to the loan in question. (SAC ¶ 47). Specifically, plaintiffs insist that "a mysterious escrow account appeared for the first time" around February 2011, and that prior to this event, "[p]laintiffs had always paid their own property taxes in a timely manner . . ." (SAC ¶ 50). However, this contention is eviscerated by judicially noticeable tax records maintained by the Alameda County Treasurer-Tax Collector, such as plaintiffs' Secured Property Tax Statement for 2009-2010. (RJN, Exh. H). This tax statement, available online at the Alameda County Treasurer-Tax Collector's website (http://www.acgov.org/propertytax/history.htm) reveals that plaintiffs <u>did</u> in fact miss two consecutive tax payments – the bi-annual payments due on November 1, 2009 and February 1, 2010. (RJN, Exh. H). As reflected in the bottom right quadrant of the tax statement, both of these payments were "delinquent", and this debt to the county was not satisfied until January 26, 2011 (the bottom right corner of the statement notes: "REDEEMED JAN 26, 2011"). This is because Wells Fargo established an escrow account to protect its security interest and advanced the necessary funds to Alameda County in late January 2011.

Accordingly, Wells Fargo's motion to dismiss the Section 2954 claim should be granted without leave to amend, as with the rest of the SAC.

## 4. WELLS FARGO DID NOT BREACH THE LOAN CONTRACT OR VIOLATE ANY IMPLIED COVENANT OF THIS AGREEMENT

Moving on to the contract-based claims, plaintiffs allege that Wells Fargo breached two key provisions in the loan agreement. (SAC ¶ 30). First, it is alleged that Wells Fargo violated Covenant 2(B) of the deed of trust, which requires the lender to furnish the borrower with written notice before imposition of an escrow account. (SAC ¶ 35). Second, plaintiffs maintain that once the impound account was established, Wells Fargo applied monthly mortgage payments in a sequence contrary to the order set forth in Covenant 3 of the trust deed. (SAC ¶¶ 31-32). Neither of these contentions have merit.

With respect to Covenant 2(B), which is the provision of the trust deed entitled "Escrow Accounts", plaintiffs agreed to the following:

> Subject to applicable law, **no escrow shall be required except upon written demand by Lender**, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ('Funds') for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." . . .

(RJN, Exh. E at p. 4) (emphasis added).

In the present case, Wells Fargo complied with the loan contract, for it notified plaintiffs in writing on January 4, 2011 that it was establishing an escrow account. (RJN, Exhs. F and G).[4]

---

[4] Judicial notice of Exhibits F and G is appropriate because the viability of plaintiffs' contract claims rest upon whether they received written notice that Wells Fargo was establishing an escrow account. Plaintiffs stress that pursuant to Covenant 2(B) of the deed of trust, "no escrow shall be required except upon written demand by Lender . . ." (SAC ¶ 35). As explained in *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds as recognized in *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)), a plaintiff may not survive a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based. See also, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.")

Specifically, the bank informed plaintiffs by letter that: "an escrow account will be established if one does not already exist." (RJN, Exh. F and G). Accordingly, the allegation critical to plaintiffs' contract claims – that "[i]n February 2011, a mysterious escrow account appeared" – is patently false. (SAC ¶ 12).

Furthermore, the contention that Wells Fargo misapplied plaintiffs' payments is easily refuted. (SAC ¶¶ 31-32; see also, ¶¶ 17-21). Pursuant to Covenant 3 of the deed of trust, a borrower's mortgage payments are to be applied in the following order:

> First, to pay prepayment charges due under the Secured Notes;
> 
> Second, to pay any advances due to Lender under this Security Instrument;
> 
> Third, to pay the amounts due to Lender under Paragraph 2 above;
> 
> Fourth, to pay interest due under the Secured Notes;
> 
> Fifth, to pay deferred interest due under the Secured Notes;
> 
> Sixth, to pay principal due under the Secured Notes;
> 
> Last, to pay late charges due under the Secured Notes.

(RJN, Exh. E at p. 5).

Here, Wells Fargo established the escrow account after giving written notice as required by Covenant 2(B) of the deed of trust, and then applied mortgage payments in the correct order as set forth in Covenant 3. Plaintiffs argue that the bank wrongfully "applied [their] payments to an escrow fund, rather than to principal and interest due under the Note." (SAC ¶ 33). However, Covenant 3 clearly permits Wells Fargo to recoup the amount it advanced to Alameda County before any funds are applied to interest and principal. (RJN, Exh. E at p. 5: "Second, to pay any advances due to Lender . . . Fourth, to pay interest due under the Secured Notes; . . . Sixth, to pay principal due under the Secured Notes.").

The pleadings also assert that "WELLS FARGO breached the implied covenant of good faith and fair dealing when it refused Plaintiffs' regular monthly mortgage payments." (SAC ¶ 40). Specifically, plaintiffs contend that Wells Fargo violated Covenant 1 of the deed of trust, in which the borrower promises to "pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due . . ." (SAC ¶ 41: RJN, Exh. E at p.

3). Plaintiffs argue that "implicit in this term, [Wells Fargo] had an obligation not to hinder [their] performance or prevent [their] ability to make payments." (SAC ¶ 41). Yet this argument is misplaced, for as previously explained in this motion, plaintiffs missed two consecutive property tax payments in 2009-2010. (RJN, Exh. H). In this circumstance, Civil Code § 2954(a) allows a lender to unilaterally establish an escrow account and advance tax payments to the county. After all, if a borrower neglects to make payments to the county and a tax lien is placed on the property, the bank's security interest is relegated to a secondary position.

In other words, the establishment of the impound account and Wells Fargo's subsequent application of plaintiffs' mortgage payments to pay down this account in no way "hindered" plaintiffs from meeting their contractual obligations. After all, Covenants 1 through 3 of the deed of trust are meant to be read in concert. Covenant 1 obligates the borrower to repay all interest and principal due under the loan in timely fashion, plus any late charges assessed under the promissory note. Covenant 2(B) gives the lender the right, "subject to applicable law" [e.g., Civil Code § 2954] to establish an escrow account after providing written notice to the borrower. Covenant 2(B) adds that once an escrow account is established, the borrower shall pay the lender the amounts advanced for "yearly taxes, penalties and assessments" and "yearly hazard or property insurance premiums." Finally, Covenant 3 lays out the order in which the lender must apply payments received from the borrower, and it is evident from plaintiffs' allegations that Wells Fargo applied payments in the correct sequence.

Put quite simply, the claims for breach of contract and implied covenant are incapable of amendment and should be dismissed with prejudice, as with the claim that Wells Fargo violated Civil Code § 2954(a).

### 5. THE UCL CLAIM IS CONCLUSORY AND MERITLESS

**A.** **Plaintiffs' UCL Claim Is Entirely Derivative In Nature And Therefore Falls By The Wayside**

A cause of action under Business & Professions Code § 17200 must state with reasonable particularity the facts showing unlawful, unfair, or fraudulent business acts on the part of the defendant. *Korea Supply Company v. Lockheed Martin Corporation*, 29 Cal. 4th 1134, 1143

(2003); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993). In this action, plaintiffs simply incorporate the three prior claims by reference. (SAC ¶¶ 52-56). Because the first through third claims are defective, this fourth cause of action falls by the wayside. In addition, the UCL claim suffers from the following fatal shortcomings.

**B.     A Litigant Cannot Manufacture A Tort From A Contract Claim**

As noted, plaintiffs' UCL claim is predicated entirely on the claims for breach of contract, breach of the implied covenant, and alleged violation of Civil Code § 2954. To the extent the UCL claim is based on the contract claims, it fails as a matter of law, for a litigant cannot recast a contractual allegation as a tort even if a breach was negligent, fraudulent, or willfully malicious. Without acts that are *independently* tortious, no tort arises from a breach of contract. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515-516 (1994).

In rejecting an effort to convert a breach of contract claim into one for tort, the California Supreme Court in *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) explained:

> A person may not ordinarily recover in tort for breach of duties that merely restate contractual obligations. Instead, "[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies."

Ample case law supports the position that plaintiffs' tort allegations are mere surplussage and should be disregarded. An instructive case is *Shoop v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 64153 (E.D. Cal. June 28, 2010), in which the borrower brought various claims against the foreclosing lender, including one for intentional infliction of emotional distress. In dismissing the emotional distress claim, the court emphasized that: "the complaint 'presents a case founded on contract' and that the parties have a limited 'contractual relationship created when the Note and Deed of Trust' were executed by Ms. Shoop. The contractual relationship bars the complaint's tort claims." *Shoop,* 2010 U.S. Dist. LEXIS at *24; See also, *Ennis v. Mortgage Tree Lending, Inc.*, 2009 U.S. Dist. LEXIS 101255, *12 (E.D. Cal. Oct. 30, 2009) (tortious interference claim dismissed because plaintiffs cannot cast their contract allegations as a tort); *Kelomar, Inc. v. Kulow*, 2009 U.S. Dist. LEXIS 106786, *4-7 (S.D. Cal. Nov. 12, 2009) (in dismissing a negligence claim, the court explained that "conduct constituting

a breach of contract is deemed tortious only when it also violates a duty independent of the contract . . .").

Another illustrative case in the context of a loan contract is *Baner v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 103737 (N.D. Cal. July 23, 2012), in which the district court applied the above principles. In *Baner*, plaintiff ("Baner") alleged that Wells Fargo had furnished him with several loan commitments which were necessary to proceed in financing a condominium development project. According to Mr. Baner, Wells Fargo reneged on these loan commitments at the last minute, forcing him to obtain less favorable financing from other lenders. Based on these allegations, Baner brought claims for fraud, negligent misrepresentation, and breach of contract, which were "premised at least in part on the allegation that Wells Fargo breached a promise in 2008 when it reneged on four loan commitments." *Baner*, 2012 U.S. Dist. LEXIS at *14.

Analyzing the validity of Mr. Baner's tort claims, Judge Laporte recited the familiar rule that absent special public policy considerations, a litigant cannot manufacture a tort from a contract claim. *Id*. at *33-36. Because the plaintiff had not alleged sufficient facts giving rise to independent tort liability, the *Baner* court dismissed the claims for fraud and negligent misrepresentation with leave to amend. *Id*. at *36.

In light of the foregoing, plaintiffs' UCL claim "merely restate[s] contractual obligations" and is not actionable. *Aas, supra*, 24 Cal. 4th at 643.

### C. Plaintiffs Seek Improper Relief In Connection With The UCL Claim

On a final note, it must be stressed that plaintiffs seek actual damages based on the alleged unfair competition of Wells Fargo. (e.g., SAC ¶ 59: "Plaintiff[s] [were] injured and [are] entitled to actual damages. . ."; *see also*, SAC ¶ 60: "Plaintiffs also seek exemplary and punitive damages in an amount sufficient to punish Defendant's wrongful conduct and to deter future misconduct."). However, case law is settled that only equitable remedies are available under the UCL – specifically, restitution and injunctive relief. *Korea, supra*, 29 Cal. 4th 1134, 1144-45 (2003); *Kasky v. Nike, Inc*., 27 Cal. 4th 939 (2002). Accordingly, the damage requests at paragraphs 59 and 60 of the complaint are a nullity.

## 6. **CONCLUSION**

For the foregoing reasons, Wells Fargo requests an order granting its motion to dismiss without leave to amend as to each claim in the second amended complaint.

Respectfully submitted,

Dated: May 5, 2014          ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP

By: /s/ Michael Rapkine
Michael Rapkine
mrapkine@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A.
("Wells Fargo")

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

*Attorneys for Plaintiffs*

Matthew D. Mellen, Esq.
Jessica Galletta, Esq.
MELLEN LAW FIRM
411 Borel Avenue, Suite 230
San Mateo, CA 94402
Tel: 650.638.0120 | Fax: 650.638.0125
Email: mellenlaw@yahoo.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on **May 5, 2014**.

| Barbara Cruz | */s/ Barbara Cruz* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

93000/BR0723/00862596-3

1

CASE NO.: 3:12-CV-06321-JD
CERTIFICATE OF SERVICE