UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON ROSELL, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　　Defendant. | Case No. 12-cv-06321-JD<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 53 |

## INTRODUCTION

Wells Fargo Bank, N.A. moves to dismiss Plaintiffs Jon and Jane Rosell's Second Amended Complaint ("SAC"). A hearing on Wells Fargo's Motion to Dismiss was held on June 25, 2014. Wells Fargo seeks dismissal all of the SAC's claims, but it conceded in its reply brief that two of the Rosells' claims should go forward. The Court agrees, and also finds that their claim under California Civil Code § 2954 should go forward. The Rosells' claim under California's Unfair Competition Law ("UCL") is dismissed with prejudice. Accordingly, Wells Fargo's motion is granted in part and denied in part.

## BACKGROUND

In January 1990, Plaintiffs Jon and Jane Rosell bought a house with a mortgage that was later refinanced by World Savings Bank in 2002. *See* Dkt. No. 49 at 3. In 2007, World Savings Bank changed its name to Wachovia Mortgage. *See* Dkt. No. 54, Ex. A. When Wells Fargo acquired Wachovia Bank in 2009, it acquired the Rosells' loan. Dkt. Nos. 49 at 3; 54, Ex. D.

In October 2009, the Rosells contacted Wells Fargo about a loan modification, and submitted documents to Wells Fargo to obtain a loan modification. Dkt. No. 49 at 3. Wells Fargo subsequently closed the Rosells' loan modification file because it was "unable to process their

1    request due to non-receipt of required documentation or information." *Id*. The Rosells
2    acknowledge that they did not complete the loan modification or sign any final loan modification
3    documents. *Id*. at 4.
4          Beginning in 2010, Wells Fargo started returning portions of the Rosells' monthly
5    mortgage payments that exceeded the minimum payment in a fashion that Plaintiffs contend was
6    "sporadic and impossible to track on statements." *Id*. at 5. In February 2011, the Rosells allege
7    that a "mysterious" escrow account appeared on their monthly statement. *Id*. Shortly after, they
8    received a letter from Wells Fargo stating that the bank had attempted to pay their property taxes
9    and discovered that the taxes were already paid. *Id*. The Rosells received two more letters from
10   Wells Fargo showing that the bank charged their account for the taxes and then refunded that
11   amount back to their account. *Id*. When the Rosells contacted Wells Fargo about this issue, the
12   bank told them that their loan had been modified in October 2009, and that the escrow account had
13   been opened. *Id*. The Rosells were "shocked" to learn about the modification, because they had
14   not completed the loan modification application, and had instructed Wells Fargo to remove the
15   escrow account. *Id*. On January 18, 2012, the Rosells received a letter indicating that the escrow
16   account had been cancelled and that they were responsible for the next tax installment in March
17   2012. *Id*.
18         In March and April 2012, the Rosells contend Wells Fargo again paid the property tax on
19   their home, and that the duplicate payment was again refunded to Wells Fargo, who refused to
20   acknowledge the receipt of the refunded monies and refused to eliminate the balance on the still-
21   existing escrow account. *Id*.
22         On April 20, 2012, the Rosells' monthly payment was not applied to any account, but
23   instead was categorized as "Unapplied Funds." *Id*. The Rosells' statement indicated that no
24   payment was made that month, and a $181.28 late fee was applied to the balance due. *Id*. The
25   Rosells contend that up to this time, they had never missed a payment and made every payment in
26   full and on time. *Id*. The following month, the Rosells' payment was again categorized as
27   "Unapplied Funds" and was applied to their April 2012 payment that Wells Fargo considered due.
28   *Id*. Wells Fargo also used those funds to make a $665.64 payment to the escrow account. *Id*.

1  Plaintiffs allege that this misunderstanding continued to occur every month after April 2012,
2  whereby Wells Fargo improperly applied their mortgage payments and charged improper late fees.
3  *Id*. at 6.  In July 2012, the Rosells began receiving Notices of Intent to Foreclose on their property,
4  despite their allegedly timely payments every month.  *Id*.

5        The Rosells state they made all regular monthly payments until November 2012, when
6  Wells Fargo began refusing to accept them.  *Id*. at 7.  On November 27, 2012, the Rosells
7  attempted to pay their regular mortgage payment at their local Wells Fargo branch, but were told
8  that they were 45 days past due on their mortgage, and had to submit all payments via telephone.
9  *Id*.  When Plaintiffs attempted to pay via telephone, they were told by a Wells Fargo employee
10 that they were $13,000 past due, and that their payment would not be accepted.  *Id*.  The Rosells
11 attempted to pay their monthly payment in December 2012 at the local Wells Fargo branch and
12 again the bank refused to accept their regular monthly payment.  *Id*.

13       On December 13, 2012, the Rosells filed a complaint against Wells Fargo, alleging breach
14 of contract, breach of the covenant of good faith and fair dealing, conversion, and unfair
15 competition.  *See* Dkt. No. 1.  On March 7, 2013, the Court dismissed without prejudice the breach
16 of contract and unfair competition claims, and dismissed with prejudice the conversion claim.  *See*
17 Dkt. No. 19.  On April 3, 2013, the Rosells filed an amended complaint, and on April 29, 2013,
18 Wells Fargo filed an answer to the amended complaint.  *See* Dkt. Nos. 20, 21.  On April 4, 2014,
19 the Court granted the parties' joint stipulation permitting the Rosells to file a second amended
20 complaint.  Dkt. No. 48.  The Second Amended Complaint was filed on April 14, 2014.  Dkt. No.
21 49.  The Second Amended Complaint alleges claims for breach of contract, breach of the covenant
22 of good faith and fair dealing, a violation of California Civil Code § 2954, and unfair competition.
23 *Id*.

24       On April 5, 2014, Wells Fargo moved to dismiss the complaint and also filed a Request for
25 Judicial Notice, pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, requesting the Court
26 take judicial notice of eight documents in support of its motion to dismiss.  *See* Dkt. Nos. 53, 54.
27 Plaintiffs filed an Objection to Defendant's Request for Judicial Notice, along with their
28 Opposition to the Motion to Dismiss on May 19, 2014.  *See* Dkt. Nos. 55, 56.

**DISCUSSION**

**I.  Jurisdiction**

The Court has an independent obligation to examine whether subject matter jurisdiction exists prior to considering a case on the merits. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Under 28 U.S.C. § 1441(b), federal jurisdiction is proper where defendants and plaintiffs are from different states, and the amount in controversy exceeds $75,000. Here, diversity of citizenship is established as Wells Fargo is a citizen of South Dakota (*see Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 715 (9th Cir. 2014)), and plaintiffs are citizens of California, (*see* Dkt. No. 49 at 2).

Turning to the amount in controversy, in the SAC, the Rosells' prayer for relief includes a request for an injunction. When an action seeks declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); *see also Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1045 (9th Cir. 2011) (determining that the amount in controversy was equal to the assessment value of the "object in litigation," or property). Because the "object in litigation" is the Rosells' mortgage, and the amount of the mortgage is approximately $1,045,000, (*see* Dkt. No. 62 at 2), the amount in controversy exceeds the required $75,000, and jurisdiction is therefore proper.

**II.  Request for Judicial Notice**

Wells Fargo argues that several of the Rosells' claims fail as a matter law based on judicially noticeable documents, and has requested that the Court take judicial notice of eight documents. *See* Dkt. No. 54. The Rosells oppose the Court granting judicial notice of certain of those documents. *See* Dkt. No. 56.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotations and citation omitted) (overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)). There are, however, three types of evidence

4

1  which a court may properly consider on a motion to dismiss: (1) exhibits attached to the
2  complaint, (2) evidence subject to judicial notice under Federal Rule of Evidence 201, and (3)
3  "documents whose contents are alleged in a complaint and whose authenticity no party questions,
4  but which are not physically attached to the pleading." *Champlaie v. BAC Home Loans Servicing,*
5  *LP*, 706 F.Supp.2d 1029, 1039-40 (E.D. Cal. 2009) (citing *Branch v. Tunnell*, 14 F.3d 449, 454
6  (9th Cir. 1994), overruled on other grounds by *Galbraith*, 307 F.3d at 1124); *Knievel v. ESPN*, 393
7  F.3d 1068, 1076 (9th Cir. 2005) (holding that documents considered by the court "whose contents
8  are alleged in a complaint and whose authenticity no party questions, but which are not physically
9  attached to the plaintiff's pleading" may be considered without further foundation). The third type
10 of evidence is permitted to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by
11 deliberately omitting documents upon which their claims are based." *Champlaie*, 706 F.Supp.2d
12 at 1040 (citation omitted). A court may not take judicial notice of a fact that is "subject to
13 reasonable dispute." *Gutierrez v. Wells Fargo Bank N.A.*, No. C 12-1135 SI, 2012 WL 3257702,
14 at *4 (N.D. Cal. Aug. 8, 2012) (citing Fed. R. Evid. 201(b)) (citation omitted).

15 The Rosells oppose the request for judicial notice of: (1) a letter from Wells Fargo to
16 plaintiffs dated January 4, 2011, (2) a version of the January 4, 2011 letter that bears handwritten
17 comments allegedly from the Rosells, and (3) an Alameda County secured property tax statement
18 for 2009-2010. Dkt. No. 54, Exs. F, G, H. The Rosells dispute the authenticity of the two
19 versions of the January 4, 2011 letter, particularly with respect to the handwriting on Exhibit G.
20 *See* Dkt. No. 56. Because the authenticity of these letters is in dispute, they will not be judicially
21 noticed at this time. *See Lee*, 250 F.3d at 689; *see also Zody v. Microsoft Corp.*, No. 12-cv-00942-
22 YGR, 2012 WL 4051197, at *6 (N.D. Cal. Sept. 13, 2012) (declining to take to judicial notice of
23 documents where plaintiff disputed their authenticity).

24 With respect to the Alameda County tax statement, Wells Fargo contends it is judicially
25 noticeable as a public record obtained from a government website. Dkt. No. 54 at 4. While the
26 tax statement itself may be judicially noticeable, Wells Fargo is asking the Court to take judicial
27 notice of this statement to find that the Rosells' California Civil Code § 2954(a) claim fails as a
28 matter of law, because the tax statement allegedly shows "that plaintiffs missed two consecutive

1   property tax payments in 2009-2010, thereby allowing the bank to set up an impound action under
2   the statute." Dkt. No. 53 at 1.  The Court declines Wells Fargo's request to take judicial notice of
3   the tax statement for that purpose.  The Court also declines to find as a factual matter -- at this
4   stage of the litigation -- that the Rosells missed their property tax payments in 2009 and 2010. *See*
5   *Gutierrez*, 2012 WL 3257702, at *4 (denying request for judicial notice of a deed of trust in order
6   for the Court to conclude that the deed permitted Wells Fargo to charge a fee and holding that "at
7   this stage of the litigation the Court cannot hold as a factual matter that the Deed of Trust
8   authorizes the Tax Service Fee.")

9   The Court will take judicial notice of Wells Fargo's a letter dated November 19, 2007 from
10  the Office of Thrift Supervision, Department of the Treasury; Wachovia Mortgage, FSB's charter
11  dated December 31, 2007; a letter dated November 1, 2009 from the Comptroller of the Currency
12  confirming Wachovia's conversion to a national bank with the name Wells Fargo Bank
13  Southwest, N.A.; and a Federal Deposit Insurance Corporation profile and history of World
14  Savings Bank, FSB, dated March 14, 2012 -- Exhibits A-D -- as these documents are properly
15  subject to judicial notice under Federal Rule of Evidence 201.  *See Hite v. Wachovia Mortgage*,
16  No. 2:09-cv-02884-GEB, 2010 U.S. Dist. LEXIS 57732, at *7 (E.D. Cal. June 10, 2010) (granting
17  judicial notice of these same documents).  The Court will also take judicial notice of the deed of
18  trust -- Exhibit E -- because it is a publicly recorded document that may be judicially noticed. *See*
19  *id.*; *Valasquez v. Mortgage Elec. Reg. Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *3
20  (N.D. Cal Nov. 17, 2008) (citing *W. Fed. Sav. v. Heflin*, 797 F.Supp. 790, 792 (N.D. Cal. 1992)
21  (taking judicial notice of documents in a county public record, including deed of trust)).

22  **III.    Motion to Dismiss**

23  Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
24  if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to
25  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
26  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
27  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a
28  sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

6

S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 544, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*. In deciding whether the plaintiff has stated a claim, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in his or her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not required, however, to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

The SAC alleges claims for: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) a violation of California Civil Code § 2954, and (4) unfair competition under California Business & Professions Code § 17200. All of these claims except the UCL claim will go forward.

**A.   Breach of Contract and Breach of Implied Covenant of Good Faith & Fair Dealing**

The Court's prior order dismissed the Rosells' breach of contract claim on the ground that the complaint did not allege "a clear statement of the facts showing the existence of a contract, and the breach of said contract by Wells Fargo." Dkt. No. 19. The Court sustained the Rosells' claim for Breach of Implied Covenant of Good Faith and Fair Dealing. *Id.*

Wells Fargo initially moved to dismiss these claims, but in light of the Rosells' objections to the authenticity of the two January 4 letters, Wells Fargo withdrew its motion as to these claims. *See* Dkt. No. 54 at 5. Wells Fargo concedes in its reply brief that "its attack on the contract-based claims is not appropriate at the 12(b)(6) stage of the litigation." *Id.* at 1. The Court agrees and

7

1  finds that the Rosells have adequately alleged these claims.  Accordingly, these claims will go
2  forward.

### B. California Civil Code Section 2954

Wells Fargo claims that the Rosells failed to state a claim for a violation of California Civil Code § 2954, because -- based on judicially noticeable documents showing that they missed two consecutive tax payments -- Wells Fargo was permitted to impose an escrow account for tax payments and insurance.  Dkt. No. 53 at 4.

Section 2954(a) prohibits a lender from creating an improper mortgage-related escrow account.  It provides that "[n]o impound, trust, or other type of account for payment of taxes on the property, insurance premiums, or other purposes relating to the property shall be required as a condition of a real property sale contract or a loan secured by a deed of trust or mortgage on real property containing only a single-family, owner-occupied dwelling," except in five enumerated circumstances.  One circumstance is when "upon a failure of the purchaser or borrower to pay two consecutive tax installments on the property prior to the delinquency date for such payments."  *Id*. § 2954(a)(1)(C).

Because the Court has declined to take judicial notice of the Alameda County tax statement -- the sole basis for Wells Fargo's argument that this claim should be dismissed -- this claim will go forward.  While Wells Fargo's interpretation of the tax statement ultimately may be correct, at this stage of the litigation, the Court cannot hold as a factual matter that the tax statement precludes the Rosells' claim under California Civil Code § 2954.  *See Gutierrez*, 2012 WL 3257702, at *4.

### C. Unfair Competition

The Court's prior order dismissed the Rosells' UCL claim with leave to amend to "clarify the basis for the claim that Wells Fargo engaged in 'unlawful' and 'unfair' business practices" and ordered the Rosells to "identify the predicate law they claim has been violated, and with regard to the alleged 'unfair' practices . . . allege facts identifying the practices and specifying the reasons they are unfair."  Dkt. No. 19 at 1-2.

California's UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."

Cal. Bus. & Prof. Code § 17200. When analyzing a UCL claim, courts consider each of the three prongs to determine whether a practice is unlawful, unfair, or fraudulent. *Cel-Tech Comm'n., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Adequately pleading any one of the prongs is sufficient to survive a motion to dismiss. *See MacDonald v. Ford Motor Co.*, No. 3:13-CV-02988-JST, 2014 WL 1340339, at *7 (N.D. Cal. March 31, 2014).

In the SAC, the Rosells claim that Wells Fargo's conduct was an unfair business practice for two reasons: (1) "it is unfair to [] refuse to take a borrower's payments and then place a borrower's loan in default and sell the property at a foreclosure sale; and (2) "it is unfair to attempt to circumvent California's laws regarding the procedure governing non-judicial sales and then attempt to sell a borrower's property at foreclosure sale." Dkt. No. 49 at 14.

Wells Fargo contends that the UCL claim should be dismissed because it is entirely derivative of the Rosells' contract claims. Dkt. No. 53 at 8. Wells Fargo asserts that even though the Rosells have sufficiently alleged their contract claims, the unfair competition claim simply echoes those allegations, and plaintiffs may not ordinarily recover in tort for breach of duties that restate contractual obligations. *Id*. Wells Fargo also contends that the Rosells cannot seek actual damages based on their unfair competition allegations, as only equitable remedies are available under California's unfair competition law. *Id*.

A breach of contract may form the basis of a UCL claims but only if plaintiff alleges conduct that is unlawful, unfair or fraudulent independent of the breach. *See KEMA, Inc. v. Koperwhats*, 658 F.Supp.2d 1022, 1033 (N.D. Cal. 2009); *Conder v. Home Savings of Am.*, 680 F.Supp.2d 1168, 1176 (C.D. Cal. 2010); *Puentes v. Wells Fargo Home Mtg., Inc*., 160 Cal.App.4th 638, 645, 72 Cal.Rptr.3d 903 (2008). A contract-based UCL claim must have a "plus" factor to make it independently actionable under the UCL. Otherwise, every garden-variety breach of contract claim, which often includes the charge that the breach was "unfair" to the non-breaching party, would double as a UCL claim. While the UCL is famously broad in scope, the Rosells have not offered any case law or statutory analysis establishing that it applies to every breach of contract, without more. The Rosells have had two opportunities to allege a plus factor showing an

independent violation of the UCL, and have not come up with anything more than breach of contract. The UCL claim is dismissed with prejudice.

## CONCLUSION

Wells Fargo's motion is granted in part and denied in part. The Rosells' claims for breach of contract, breach of the covenant of good faith and fair dealing, and a violation of California Civil Code § 2954 will go forward. The Rosells' UCL claim is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: August 15, 2014

_____
JAMES DONATO
United States District Judge